George W. Robinson v. Epping, Bellas & Co.—Syllabus.

GEORGE W. ROBINSON, APPELLANT, VS. EPPING, BELLAS & CO., APPELLEES.

1. Where, in a chancery suit, a decree is made for an accounting between the complainant and the defendants therein and for the dismissal of an action at law instituted by the latter against the former, and a bond is given by such complainant, conditioned that he shall pay to the defendants such sum as may be found to be due them upon the final determination and decree in the chancery cause, the omission to actually dismiss the action at law is not a defense in behalf of a surety on the bond, to an action brought thereon to recover of him the sum decreed in the chancery cause to be due by the complainant therein.

2. The bond does not make the actual dismissal of the action at law a condition to the surety's liability for the sum decreed to be due by the principal in the bond.

3. A surety's liability is limited by the terms of his undertaking, and it is not to be extended by implication. A bond conditioned for the payment of such sum as may be found to be due by the principal to the obligees therein, upon the final determination and decree in a chancery suit, does not extend the liability of the surety to the costs which the obligees may recover, in such suit, but limits his liability to the *indebtedness* of the latter to the former as fixed by such decree.

4. The doctrine of the former decision in this case (Epping, Bellas & Co. vs. Robinson, 21 Fla., 36) as to the applicability of the act of 1868, chapter 1627, p. 326, McC.'s Digest, in so far as it provides a method of bringing matter before the County Court as a court of probate, by petition or complaint, held not to mean that such a petition or complaint is necessary and jurisdictional to the appointment of an administrator, but only that it is the regular method of applying for such an appointment, and further, that if the meaning of the decision is that the petition is jurisdictional, a sufficient compliance therewith, as against a collateral attack, is shown by the records of the County Court in this case.

5. The requirement of sec. 5, p. 78, Mc.'s Digest, in case neither the husband or wife of the intestate or. "other person entitled to distribution," apply for administration, is that citation shall be published both in a newspaper and by posting for the period of six weeks, and in the manner stated in the section, but the citation need not state the name of any person as contemplated for appointment as administrator.

6. A statement or recital in the order of the County Court granting administration, of "citation having been published for six weeks as required by law," is an adjudication by that court of the fact that a publication had been made of the citation for the period stated and in the modes—*i. e.,* in a newspaper and by posting—prescribed by law.

7. Whether or not the testimony before the County Court was sufficient to justify the conclusion adjudicated, cannot be inquired into in a collateral proceeding.

8. Upon the issues of this case as presented by the first and second pleas and a feature of another plea, and under the law of the

case as settled in a former decision of this court, (21 Fla., 37,) if it appears from the record of the County Court of Escambia county that the intestate was not at the time of his death possessed of any goods, chattels or lands in any county in this State, or if it be that at the time of his death the intestate did not have any such property in Escambia county, and the fact or averment that he did have such property, was not presented to and adjudicated upon affirmatively by such court in granting the letters of administration, and the absence of such presentation and adjudication appears by the record of such court, the grant of administration was void, and the pleas are sustained.

9. The record of the order adjudicating the publication of the citation, as indicated above, such order bearing date April 15th, 1882, states "that letters of administration have this day been issued to Walter Tate, he having given bond under oath, *and otherwise qualified according to law,*" and the letters of administration of same date, as recorded in said court in compliance with §13, p. 988, Mc.'s Digest, recite that the administrator has "*duly qualified according to law.*" These records are evidence of the affirmative determination of such court upon the question of granting administration upon the estate of the intestate.

10. The statute of this State (§7, p 78, McC.'s Dig.) provides that previous to granting letters of administration the court shall require the person applying for the same to state upon oath or affirmation, to the best of his knowledge and belief, whether there be any heirs or legal representatives of the intestate in being or not, and whether, according to the best of his knowledge and belief, the deceased died without a will   Upon the files of the County Court is an affidavit appearing to be connected with the administration of the intestate's estate and purporting to have been made and subscribed by the person who was appointed administrator and to have been sworn to before the County Judge, who made the order and issued the letters of administration.   It bears date the 13th day of ———, 1882.   This affidavit states that there are no heirs of the intestate in this State or out of it, and that he left no will, and includes the usual administration oath.   The legal conclusion from this whole record is, that the affidavit was on file at the time the order of April 15th, 1882, was made and the letters issued, and that it is to such affidavit that the language of the order and of letter of administration, italicized in the preceding head note, refers.

11. Such affidavit also states that the intestate " died leaving an estate " in Escambia county, Florida, " consisting of an unliquidated claim, the amount whereof deponent can not state." Considering this averment in connection with the order and the letters of administration, it affirmatively appears by the records of the County Court that the question of the intestate's having at his death property in said county, was presented to and adjudicated upon affirmatively by such court, and the grant of administration by it is valid as against any collateral attack, and the pleas are not sustained.

12. Though the statute requiring the oaths in question does not require that they shall contain the statement as to the intestate's leaving property in said county, yet, as the only practical purpseo that it could have been put in the affidavit for was to present for the adjudication of the court the fact of the existence of such property, and thereby show the jurisdiction of the County Court to grant administration, it must be held to have been made for this purpose and not without a purpose to serve a substantial end.

13. The grant of administration was an adjudication by the County Court of the sufficiency of the presentation of the fact of assets. and of its presentation in the form of a petition, and such adjudication can not be questioned in a collateral proceeding.

14. The fact that the record of the County Court does not affirmatively show that the question of assets had not been presented or considered before the issue or publication of the citation is immate rial. It is sufficient if the record of the court shows upon its face, even at as late a stage of the proceedings as the order for letters to issue, or the final adjudication of administration, that the question was presented to the court and adjudicated affirmatively.

15. In the former decision in this case (21 Fla., 52,) it was held, in construing §3, p. 77, McC.'s Digest, that the term "goods," embraces choses in action, and that the county, in this State, where the debtor of an intestate dying out of the State, resides, is the one in which letters of administration should be granted. Assuming, as contended by appellant, that the "unliquidated claim" mentioned in the record of the County Court, is the claim asserted by the intestate in his above mentioned chancery suit, such claim is within the above definition of the term "goods." The fact that the suit in chancery resulted, after the

death of the intestate, against his administrator, does not affect the previous adjudication of the County Court of its existence as a chose in action, or defeat the jurisdiction of such court as adjudicated by itself.

Appeal from the Circuit Court for Escambia county.

Judge Finley, of the Fifth Circuit, sat in place of the Chief-Justice, who was disqualified.

This case was before this court on an appeal taken by Epping, Bellas & Co., and an opinion was rendered at the June term, 1884, holding the first plea to be good and the second to be insufficient and reversing the judgment of the Circuit Court.   See Epping, Bellas & Co. vs. Robinson, 21 Fla., 36.   Upon the remanding of the cause the Circuit Court made an order giving leave to the parties to amend their pleadings. .

The first plea, which as stated was held to be good, is as follows: " As to the appointment of Walter Tate, administrator of the estate of said Y. S. Hirschfelder, alleged in said declaration, that the said Y. S. Hirschfelder was never a resident of Florida, but for many years prior thereto and at the time of his death, mentioned in said declaration, had been and was a resident of Alabama, and died at a place out of the State of Florida, and at the time of his death was not possessed of any goods, chattels or lands in any county in this State, by reason whereof the appointment of said Walter Tate (which defendant avers was procured by the plaintiffs in this action and not by the production of legal authority from the representatives of the deceased Hirschfelder, qualified by law in the State of Alabama) was without any authority of law or jurisdiction in said County Court of Escambia county, *as appears upon the face*

*of and by the records of said County Court*, and was and is altogether void and of no effect." See p. 38, 21 Fla.

The defendant under the order, allowing amendments, and just mentioned, amended his second plea to read as follows:

2d. There was no final determination of the case between the plaintiffs in this suit and the said Y. S. Hirschfelder, as pending said suit Hirschfelder died, as stated in the declaration, and no legal representative of said deceased party revived said suit, nor was any legal representative of said deceased party made party to said suit, for defendant says that said Y. S. Hirschfelder died at a place out of the State of Florida, and at the time of his death was not possessed of any goods, chattels or lands in this county, nor were there any debts due to said deceased Hirschfelder from persons or a person living in this county, for the collection of which the said Walter Tate or any other person produced or had legal authority from the representatives of the deceased Hirschfelder to be appointed administrator. And the defendant avers that the facts necessary to confer jurisdiction, that is to say, the contrary of the allegations in this plea made, were not presented to and adjudicated by the County Court in granting letters of administration to said Tate as appears by the records of its proceedings.

The defendant also filed four other pleas. The third plea has been abandoned and will not be noticed. The 4th, 5th and 6th pleas are as follows:

4th plea: That the bond in the declaration mentioned was made, as appears on its face, in view of an alleged consent decree for an account and for dismissal of a suit at law in this court by plaintiffs herein against Hirschfelder, the principal in such bond, but said suit at law had not been and was not dismissed at the commencement of this action.

5th plea: That the appointment of Walter Tate as administrator of Hirschfelder was without authority of law and void in this: That the said County Court of Escambia county had no jurisdiction to grant letters of administration on the estate of said Hirschfelder, because he, the said Hirschfelder, was a citizen and resident of the State of Alabama, and died in said State, and it does not legally appear by the records of said County Court that the citation required by law was duly published and posted, or that said Hirschfelder had assets in said county on which the said County Court could grant letters of administration; wherefore defendant says the letters of administration are void and did not give legal authority for any proceeding against said Tate as the representative of the estate of Hirschfelder.

6th plea: That the appointment of Tate as administrator of Hirschfelder was made upon citation issued without any petition or complaint in writing upon which to base such citation, and that the County Court, in the absence of such a petition, had no authority or jurisdiction to issue the citation or grant letters of administration on such citation, whereupon the letters are void and did not authorize any proceeding by plaintiff against Tate as such administrator in the suit in which the decree was never given against him as such administrator.

To the first plea the plaintiff replied: That the County Court did have and possess authority and jurisdiction to grant the letters of administration, inasmuch as Hirschfelder died leaving assets in said county of Escambia, to be administered, *as appears from the records of said County Court*, and no administration of the estate of said Hirschfelder having been previously appointed by said County Court. To this replication the defendant rejoined that the

County Court did not have and possess such authority and jurisdiction by reason of anything that appears in the record of said County Court as to assets left by said Hirschfelder in said county.

The plaintiffs demurred to the 2d, 4th and 6th pleas as bad in substance and joined issue on the 5th plea.

The demurrer to the 4th and 6th pleas was sustained by the Circuit Court, but that to the 2d plea, as amended, was overruled.

After this the plaintiff filed replications to the 1st plea and the amended 2d plea, as follows—to the 1st and 2d pleas: That it is not true that it appears by the record of the Probate Court that it did not have jurisdiction, as alleged in such plea, to grant letters of administration to Walter Tate upon the estate of Y. S. Hirschfelder. He also at the same time replied to the 5th plea, that it is not true that it did not appear from the record of the Probate Court that it had jurisdiction, as alleged in said plea, to grant letters of administration upon the estate of said Hirschfelder.

The issues were tried by the court without a jury.

The plaintiff offered in evidence a certain transcript of record of the County Court of Escambia county, as follows:

NOTICE.

In the matter of the estate of Y. S. Hirschfelder, deceased.

NOTICE.

The next of kin of Y. S. Hirschfelder, deceased, late of Conecuh county, Alabama, and all others whom it may concern, are hereby notified that six weeks after the first publication hereof, and their failure to apply for administration on his estate, I will appoint some creditor of

Hirschfelder, or other fit person, to administer on the same, as may be authorized by law.

(Signed)        N. C. SHACKLEFORD, County Judge.

January 3d, 1882.

In the matter of the estate of Y. S. Hirschfelder, deceased.

Citation having been published for six weeks, as required by law, and no person entitled to administration having applied, therefore, letters of administration have this day been issued to Walter Tate, he having given bond, under oath, and otherwise qualified according to law.

Dated this 15th day of April, A. D. 1882.

N. C. SHACKLEFORD, County Judge.

STATE OF FLORIDA, }
  Escambia County. }

Before me this day came Walter Tate, who being duly sworn, says that to the best of his knowledge and belief that here are no heirs of Y. S. Hirschfelder, deceased, residing in this State or out of it. That the deceased died leaving an estate in this county consisting of an unliquidated claim, the amount whereof deponent cannot state. That the said deceased left no will. And the said deponent further says that he will well and truly administer all and singular the goods and chattels, assets and credits of said deceased, and make a true and just inventory of the same, pay his debts as far as the assets of the estate shall extend and the law direct, and make a fair distribution according to law—and render a true account of the administration of the estate when thereto required.

(Signed)        WALTER TATE.

Sworn to and subscribed before me this 13th day of——, A. D. 1882.

N. C. SHACKLEFORD, County Judge.

Endorsed—Estate of Y. S. Hirschfelder, deceased: Affidavit of administrator.

Then follows an administration bond by Tate, with Geo. W. Wright and M. H. Sullivan as sureties, bearing date the 13th day of ——, A. D. 1882, with the usual conditions, and approved by N. C. Shackleford, County Judge, and endorsed " Estate of Y. S. Hirschfelder, deceased.

" Administrator's bond, filed April 15th, 1882."

STATE OF FLORIDA, }
  Escambia County. }

Escambia County, County Court—In the matter of the es-
tate of Y. S. Hirschfelder, deceased.

*To all whom it may concern:*

Whereas, Walter Tate has this day filed his bond, with two good and sufficient sureties thereon, as administrator upon the estate of Y. S. Hirschfelder, deceased, and having duly qualified according to law; therefore, know ye that letters of administration are hereby granted unto the said Walter Tate upon all and singular the goods and chattels, rights and credits of Y. S. Hirschfelder, deceased, and he is hereby duly authorized and empowered to take charge of and manage and control the same in whomsoever hands or posession the same may be, and to do such other acts as may be prescribed by law in such cases made and pro-
vided.

Given under my hand and seal this the 15th day of April, A. D. 1882.

N. C. SHACKLEFORD, County Judge.

STATE OF FLORIDA, }
  Escambia County. }

In the Matter of Y. S. Hirschfelder, Deceased.

INVENTORY.

One suit in the Circuit Court of Escambia county, Flor-
ida, (bill in chancery,) instituted by deceased on the 22d of February, 1877, against late firm of Epping, Bellas & Co.

This suit is still pending and comprises the only interests of said estate that has come to the knowledge of the undersigned.

This 24th day of May, A. D. 1882.

WALTER TATE,

Administrator of Y. S. Hirschfelder, deceased.

Sworn to and subscribed before me this 24th day of May, A. D. 1882. N. C. SHACKLEFORD, County Judge.

Endorsed—Y. S. HIRSCHFELDER, deceased.

Inventory filed May 24, 1882.

The certificate to the above transcript is as follows:

STATE OF FLORIDA, } County Court.
Escambia County.

I, Walter Tate, Judge of said court, do hereby certify that the foregoing seven (7) pages contain a correct copy of all the papers and records in my office relating to the estate of Y. S. Hirschfelder, deceased. That of said papers all are endorsed as shown in the foregoing pages by N. C. Shackleford, the then County Judge, and that, except those marked "Application" and "Inventory," they are all recorded in a volume labelled "Journal of Proceedings in estates of deceased persons from April 12th, 1882."

Witness my hand and official seal this 16th day of January, A. D. 1886.

(Seal of office) WALTER TATE, County Judge.

And the said plaintiffs further to prove the issues in their behalf produced as a witness one N. C. Shackleford, and offered to prove by him that the affidavit of Walter Tate, offered in evidence as a part of said record of the County Court of Escambia county, but without file mark, was while he was Judge of said court filed with him before he granted letters of administration to Walter Tate on the estate of Y. S. Hirschfelder, and was before him when he

granted said letters. To the admission of Shackleford as a witness the attorneys for defendant objected that it was not competent to prove by parol testimony any fact relating to said record which must speak for itself.

Shackleford being sworn testified as follows :

I was County Judge in and for Escambia county at the time of the granting of letters of administration on the estate of Y. S. Hirschfelder to Walter Tate. The affidavit of said Tate was filed with me prior to my granting said letters of administration and was before me in granting said letters.

Plaintiffs produced as a witness one Walter Tate, who, under similar objections, testified as follows : I am the same Walter Tate to whom letters of administration on the estate of Y. S. Hirschfelder was granted. The affidavit was filed by me with N. C. Shackleford, then County Judge in and for Escambia county, before his granting letters of administration on the estate of Y. S. Hirschfelder to me.

The plaintiffs offered S. R. Mallory and F. E. de la Rua as witnesses to prove the amount of costs against the plaintiff in the case of Y. S. Hirschfelder against Epping, Bellas & Company, which were paid by the said Epping, Bellas & Company, to which defendant objected because the bond sued on does not cover such costs, which objection was overruled and defendant excepted by his attorneys. Said witnesses then testified that two hundred and eleven dollars were paid for costs in said case.

The court gave judgment for the plaintiffs for the sum of five thousand three hundred and sixty-seven 05-100 dollars.

The said defendant moved for a new trial on the following grounds, to wit :

1st. The court erred in permitting the testimony of

Shackleford and Tate in relation to the record of the County Court.

2d. The finding of the court is against evidence.

3d. The finding of the court is not supported by the evidence.

4th. The finding of the court is contrary to law.

5th. The court erred in permitting testimony as to costs and in allowing in its finding that the costs paid by the plaintiffs should be included in the judgment.

6th. The defendant was taken by surprise in the action of the court in hearing on evidence explanatory of the record ; and if the record was so open to explanation, the defendant has discovered new evidence since the trial material to the defense on the evidence of the witness, Shackleford, to explain that the words " published as required by law," appearing in the record, did not intend to assert publication of the citation in any newspaper in the State of Alabama, wherein Hirschfelder died, as the only publication in a newspaper was in the State of Florida, which defendant expects to prove by said Shackleford, if a new trial be granted.

*Maxwell & Mallory* for Appellant.

*R. L. Campbell* and *W. A. Blount*, for Appellees.

Mr. Justice Raney delivered the opinion of the court:

I. Pursuing the order of argument adopted by the counsel for appellant we consider first the ruling sustaining the demurrer to the 4th plea.

This case is an action of debt by appellees upon a bond made September 22, 1877, by Hirschfelder as principal, and appellant and another as sureties. The condition of

250 SUPREME COURT.

George W. Robinson v. Epping, Bellas & Co.—Opinion of Court.

the bond is set out *in totidem verbis* in the declaration, and is that " whereas in an action brought in the Circuit Court of Escambia county, Florida, sitting in chancery, by the above bounden Y. S. Hirschfelder, against the said Epping, Bellas & Barrs, late copartners as aforesaid, to enjoin a suit at law brought by the said Epping, Bellas & Barrs, as late copartners in the said Circuit Court, and for an account and general relief, wherein a decree by consent is entered of date ——————, A. D. 1877, for an account, and for a dismissal of said suit at law, and said decree is to take effect upon the filing of this bond, conditioned that the said Hirschfelder shall pay to the said Epping, Bellas & Barrs, as late copartners, such sum as may be found to be due to said respondents, from said Hirschfelder, upon the final determination and decree in the case ; now it the said Hirschfelder shall well and truly pay to the said Epping, Bellas & Barrs such sum as may be found to be due them upon the final decree and determination of said case, then this obligation to be void, else to remain in full force and virtue."

The declaration sets up the execution of this bond, the subsequent death of Hirschfelder, pending the chancery suit, and the appointment of Tate on or about April 15th, 1882, by the County Court of Escambia county, as the administrator of his estate, and the revival of the suit in chancery by making such administrator a party and the rendition of a decree on the 16th day of December, of the same year, to the effect that according to the report of the master therein, Hirschfelder was, in his lifetime, on the first day of July, 1876, indebted to respondents in a sum which, with interest thereon, to the filing of the report, amounted to $4,045.58, and that the administrator pay the same out of the assets of the estate, if any, now or hereafter in the hands of said administrator to be administered.

The substance of fourth plea is accurately given in the statement. It is true that by the terms of the bond, as appears upon its face, the decree for an account and for the dismissal of the suit at law was to take effect upon the filing of the bond, and therefore it may be said that the bond was made " in view " of an alleged consent decree for a dismissal of the suit at law, but it is clear that there is nothing in the bond that makes the actual dismissal of the action at law a condition to the liability of the appellant for any decree that should be obtained against Hirschfelder in the chancery proceeding. Admitting, as contended by counsel for appellant, that the object of the agreement, as to dismissal, was to give the claim on which the law proceeding of appellees was founded a status and protection in the chancery cause, we are nevertheless satisfied that if the standing upon the docket or the omission to actually dismiss, the former action, was ever available as a reason why appellees should not have relief for their claim in the chancery proceeding, it, like any other defence of Hirschfelder, or his legal representative, to such claim, should have been asserted in the chancery cause. If ever a good plea it was one in abatement and of the nature of a plea of the pendency of a former suit and can not be availed of as against this action on the decree rendered in the second or chancery cause. The surety is concluded by the decree as to any matter of defence of which Hirschfelder or his lawful representative might have availed himself in such suit. He cannot in the action now before us question the correctness of the decree. Slovell vs. Banks, 10 Wall., 583.

II. The sixth plea is, in substance, as shown by the statement that Tate's appointment as administrator of Hirschfelder was made upon citation issued without any

petition or complaint in writing as a basis therefor, and that such a petition was jurisdictional to the issue of the citation, and to a grant of letters of administration thereon.

This plea is based upon the statute of August 4th, 1868, (chapter 1627, sections 9, 10 and 11, p. 326, McC.'s Digest,) and what is said of it in the former opinion in this case, Epping, Bellas & Co. vs. Robinson, 21 Fla., 36. This act, says the opinion referred to, " provides the method of bringing matters before the court for its action, to-wit, by petition in writing, and the facts stated in the petition are the grounds of its judgment. Petit's Admr. vs. Petit, 32 Ala., 305 ; Hay's Admrx. vs. McNealy, 16 Fla., 409. When the County Court acts upon the petition and grants the letters, the facts alleged are adjudicated upon and its judgment upon these facts is conclusive, except in a direct proceeding to reverse, set aside or annul the order or judgment of the court. And when the record makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was no other or different evidence respecting the fact. Galpin vs. Page, 18 Wall., 366."

It is contended by appellants that the law of this case, as established by the former opinion, is that a petition is necessary and jurisdictional to the action of the County Court in the appointment of an administrator. Though under the view we take of this case, as shown by a subsequent paragraph, this record of the County Court shows a sufficient compliance with the requirement of the statute mentioned as to a petition, to meet a collateral attack, still we are not satisfied that the opinion supports the contention advanced. There is nothing in the extract quoted above that so declares, or that goes farther than to say that the procedure prescribed by that statute is the

proper and regular one. Of course where there is a petition and it fails to show jurisdiction, and the record does not otherwise show it, the want of jurisdiction is apparent upon the record. Where, however, the record considered as a whole, does show jurisdiction, a failure to comply with the provisions of the statute of 1868 would be only an irregularity of precedure and the subject of correction by direct proceeding.

The doctrine of the above extract that the statements of the petition are the grounds of the court's judgment, is advanced upon the assumption that the record of the Probate Cour, when seen, would disclose a case in which the procedure deemed proper by the court had been followed, but there is nothing in it that discusses the effect of the absence of a petition in case the record should otherwise show jurisdiction, or that declares a petition indispensable. The general doctrine of the opinion is that it is sufficient if the jurisdiction appears somewhere upon the record.

We must say, however, that we do not wish to be understood as concurring in the view that the procedure provisions of the act of 1868 apply to the matter of the appointment of an administrator; although it be that as to the case before us we are constrained to state that the opinion does declare that such act furnishes the measure of proper though not indispensable procedure.

III. The third plea having been abandoned, we are brought to a consideration of the trial upon the issues joined upon the 1st, 2d and 5th pleas.

The gravamen of the controversy under the first plea is, that Hirschfelder, who was a resident of Alabama, and died out of the limits of the State of Florida, was not, at the time of his death, possessed of any goods, chattels or

lands in any county in this State, and that this fact appears upon the face of and by the record of the County Court of Escambia, and that consequently the appointment of Tate as administrator (which appointment is averred to have been procured by plaintiffs without authority from the representatives of Hirschfelder, qualified under the laws of Alabama,) was an act without authority of law, or without jurisdiction in said County Court.

The gravamen of the second plea is that Hirschfelder died out of the State, pending the chancery suit, and not only was at the time of his death not possessed of any goods, chattels or lands in Escambia county, but also there were not any debts due to him from any persons or person living in such county, for the collection of which neither Tate nor any other person produced or had legal authority from the representatives of Hirschfelder to be appointed administrator; and that it appears by the record of the County Court that facts necessary to confer jurisdiction upon it to appoint an administrator—that is to say, the contrary of these allegations—were not presented to and adjudicated by such County Court in granting administration to Tate.

The parts of the above pleas that aver the want of authority from representatives of Hirschfelder, qualified by law in the State of Alabama, to procure administration here, have been disposed of for the purposes of this case adversely to appellant by the former opinion, and are beyond our consideration.

The substance of the 5th plea is that the County Court had no jurisdiction to grant the letters, because Hirschfelder was a citizen and resident of Alabama, and died there, and it does not appear by the records of such court that the citation required by law was duly published and posted,

or that Hirschfelder had assets in said county of Escambia upon which the County Court could grant letters of administration.

We will dispose of the question of the publication of the citation and then consider the other features of the pleas together.

The statute (sec. 5, p. 78, McC's. Digest,) provides that if neither the husband or wife, nor other person entitled to distribution, apply for administration, or if one applying cannot comply with the provisions of the act, then, " after citation duly published for the term of six weeks, once a week, in some newspaper printed in the district or jurisdiction where the intestate died, if any be printed there, if not in some newspaper printed in the adjoining district or State, and also by writing, posted at three public places in the county, then the said judge may grant administration to a creditor of the intestate or some fit person."

The requirement of this clause is that the publication of the citation shall be made in two ways, viz: in a newspaper and by posting.

The order of the County Court, granting letters of administration to Tate, appearing in the transcript of the record of the proceedings of that court, as read in evidence, recites that: " citation having been published for six weeks, as required by law." This is a distinct adjudication by the County Court that the publication was made for the period of six weeks in the manner required by law. It is not simply an adjudication of a publication for six weeks, but of a publication for such period according to law, or in the two modes of publication prescribed. We cannot on this proceeding inquire as to whether the evidence of such publication justified the conclusion reached, but it is unquestionable that it was the duty and within the jurisdiction of hat tribunal to ascertain whether the citation was duly

published, and that the question was presented to it and decided by it in the affirmative, and that the fact of such presentation and decision is shown by its records. It is not necessary that its records should recite the modes of publication as detailed in the statute; the language used must be held to judicially ascertain and declare a compliance with them, which is sufficient to show jurisdiction. Gunn vs. Howell, 27 Ala., 676.

The statute does not require that the citation shall mention the name of a particular individual as the " creditor " or other " fit person " whom it is intended to appoint administrator. We fail to see anything in its provisions indicating an intention upon the part of the Legislature that the terms of the citation, or the publication of the same, shall limit the power or discretion of the court, when it comes to the appointment, to the consideration of only one individual as fit for the trust. The purpose of the citation and its publication is to lay the foundation for going outside the favored class of husband, wife or other persons entitled to distribution for an administrator, and not to fix the right as between persons not belonging to the favored class. The latter construction would, in case of the failure of the particular party named in the citation to qualify, not only render a new citation and the publication thereof necessary, but introduces into the statute a requirement not sustained by its terms.

The defence made by this feature of the plea is not sustained and we pass to the other features of the three pleas.

If it appears from the record of the County Court that Hirschfelder was not at the time of his death possessed of any goods, chattels or lands in any county in this State, the first plea is sustained; and if it be that at the time of his

death Hirschfelder did not have such property in Escambia county, and the fact that he did have such property was not presented to and adjudicated upon by the County Court in granting the letters of administration to Tate, and this absence of presentation and adjudication appears upon such court's record, the second plea is made out.

Such seems to be the accepted law of this case.

The record entry or order of April 15th, 1882, made by County Judge Shackleford, and mentioned above as adjudging the publication of the citation, states that " letters of administration have this day been issued to Walter Tate, he having given bond under oath and *otherwise qualified* according to law." The letters of administration also bear date of April 15th, 1882, as appears by the copy of the same in such transcript, and they recite the fact of Tate's having given the administration bond " and having duly qualified according to law." The affidavit appears to have been sworn to " this the 13th day of ——, A. D. 1882," before Shackleford as County Judge.

The statute (McC's. Dig., Sec. 7, p. 78,) provides that previous to granting letters of administration, the court shall require the person applying for the same to state upon oath or affirmation, to the best of his knowledge and belief, whether there be any heirs or legal representatives of the intestate in being or not, and whether according to the best of his knowledge and belief, the deceased died without a will, and to make the usual administrator's oath (or affirmation) as prescribed. It is provided by law (Sec. 13, p. 988,) all letter of administration shall be recorded in the office of the County Court.

The record entry or order of April 15th and the record of the letters of administration, are the record evidence in this case of the affirmative determination of the court upon

the question of granting administration to Tate. The only qualification other than giving the bond, that he was required by law to make, before the actual grant of letters, was the oaths or affirmation referred to, and these are what is meant by the words "having otherwise qualified according to law" and having "duly qualified according to law" in the order and record of the letters. As there is an affidavit on file making the averments required by law, it must be held that it was there when such entry or order was made, and when such letters of administration were signed and issued; and an affidavit, in which these oaths are embodied and which on its face appears to have been made in connection with the administration in question, appearing on the files of the court, such affidavit and order and letters naturally connect themselves with each other. No other conclusion than that the affidavit was on file when the order was made and the letters signed, recorded and issued, is, in this case, where there is nothing to suggest the contrary, tenable.

The record of the County Court showing then, as it does, that the affidavit in question was on file when the County Judge granted letters of administration, and this affidavit containing, as it does, the averment that the deceased died leaving an estate in Escambia county, consisting of an unliquidated claim, the amount of which the deponent and applicant for administration, Tate, deposed he was unable to state, the jurisdiction of the court is thereby made apparent upon its record.

This averment was, it is true, not required by the statute, Sec. 7, p. 78, McC's. Digest, as a feature of the oaths referred to above, yet it cannot, on that account, be presumed to have not been put in for a practical purpose. The only practical purpose it could have been put in for was to make

the jurisdiction apparent upon the record. This it does and for this purpose it must be presumed it was intended. The fact that a court is not one of general jurisdiction according to the course of the common law does not deprive it of the benefit of the presumption that acts which subserve but one particular purpose were done for such purpose.

Assuming that the meaning of the former opinion in this case is that a " petition," or " complaint by petition," under the act of 1868 (Secs. 10, 11, p. 326, McC's Digest,) is a jurisdictional paper, we think this affidavit, containing the several averments that it does, is a sufficient petition as against an attack by a collateral proceeding. Its purpose was to present to the court the facts it alleges ; it was presented to the court to induce its action and the court having acted affirmatively upon it has thereby adjudged it to be sufficient both in form and substance, and being sufficient in substance to make the court's jurisdiction or right to decide upon the case appear upon its records, the correctness of its ruling upon the question of form cannot be raised here any more than can that of the sufficiency of the proof of the averments.

Admitting that the usual administrator's oath need not be made nor the bond given before the entry of an order that letters of administration shall issue, still neither such an order nor the law contemplates the actual issue of the letters before such oath and bond have been filed, but the law does contemplate that the oaths as to heirs and the absence of a will shall be made before such an order for letters to issue is entered, and the fact clearly is that in this case the oaths last referred to, and the administrator's oath and the bond, were all made and filed before there was any order for letters to issue or final adjudication of administration.

The fact that the record does not affirmatively show that the question of assets had been presented or considered before the issue or publication of the citation, is immaterial. Such publication, wherever it is proper, is a preliminary to the adjudication of a grant of administration, and the question of assets is an essential to such an adjudication, but it is sufficient if the record shows upon its face, and even at such a late stage of the proceedings as the order for letters to issue or final adjudication of administration, that the question was presented and adjudicated affirmatively. Though the question of assets should naturally be inquired into to a certain extent at least, before the issuance of the citation, yet it is not actually adjudicated until the determination to grant the letters becomes final, and if the record shows that it was considered at any time before such final adjudication, or in even making the same, it is in a proceeding of the kind before us sufficient even though it should be a fact that the consideration of such question had been expressly omitted at the time of issuing the citation.

Our conclusion is that it does not appear from the record of the County Court that Hirschfelder was not at the time of his death possessed of goods, chattels or lands in any county in this State, but that it does appear from such record that the fact that he did have such property in Escambia county was presented to and adjudicated upon affirmatively by such County Court in granting the letters of administration to Tate.

In view of the above conclusion, it is unnecessary for us to express our opinion as to the admissibility of the parol testimony of Shackleford and Tate, for if there was error in admitting it, such error is without injury to appellant,

in view of the above conclusion as to the effect of the record of the County Court.

It is urged that the record before us shows that the " unliquidated claim " of the intestate, mentioned in the proceedings of the County Court, is the claim involved in the chancery suit instituted by Hirschfelder in his lifetime against Epping, Bellas & Co. for injunction and account, the final result of which suit was a decree against Hirschfelder's administrator, for the satisfaction of which the action at bar was brought.   This claim, counsel for appellant contends, is not such a chose in action as was held in the former opinion to be in the nature of goods to authorize an administration, and the adverse result of the chancery suit to Hirschfelder's representative is called to our attention in support of their contention.

The opinion referred to holds that the term "goods," in the administration statute, includes choses in action, notes, bills and other evidences of debt.   (p. 52.)

The record of the chancery suit is not before us, nor are we informed as to what is the character of the claim made by the bill filed in it by Hirschfelder, further than that it was a bill to enjoin a suit at law, instituted by appellees, and to call them to an account.   Assuming that such a bill is the unliquidated claim referred to in the administration proceedings, we are clear that it is within the decision.   The bill must have claimed a balance to be due to Hirschfelder on an accounting by appellees, and having been filed by Hirschfelder in his lifetime, its status as a chose in action has the sanction of the intestate's resort to equity for its recovery.   The fact that the suit resulted as it did after his death does not affect the adjudication of the County Court as to its existence as a chose in action or defeat the jurisdiction of such court.

We do not mean by anything advanced in the preceding paragraph to hold that the sufficiency of the proof before the County Court of Hirschfelder having died leaving an estate in Escambia county, consisting of an unliquidated claim, and that this unliquidated claim was of such a character as to support the jurisdictional allegation, can be questioned in this or any collateral proceeding.

IV. The only remaining question to be considered is that of appellant's liability upon the bond for the costs in the chancery suit. The appellees had instituted an action at law against Hirschfelder. Hirschfelder filed a bill in equity to enjoin the prosecution of such action and for an account and general relief against appellees. The condition of the bond in question is for the payment to Epping, Bellas & Co. of such sum as may be found to be due them from Hirschfelder upon the final determination and decree in such chancery suit.

A surety does not undertake to do more than is expressed in his obligation, and he has the right to stand upon the strict terms of the same as to his liability thereon. It is not to be implied that he has undertaken more than is within the precise terms of his undertaking. Brandt on Suretyship and Guaranty, sec. 79; Raney vs. Baron, 1st Fla., 327. The meaning of the undertaking in this case, we think to be the sum of the indebtedness which might be found to be due by Hirschfelder upon final accounting, as ascertained by the decree. To extend the liability of the surety beyond the matter of the indebtedness claimed by Epping, Bellas & Co. to be due them by Hirschfelder upon an accounting, and the amount of such indebtedness as it should be fixed by the final decree, and include in such liability the feature of the costs of the equity suit, is to enlarge the liability by implication to something not

covered by the strict terms of the engagement, and to go beyond the language of the terms and the meaning of the obligation.

The amount of these costs is definitely fixed by the testimony of both witnesses at $211; and the error in allowing their recovery under the bond in nowise affects the balance of the recovery in the judgment appealed from, and, as a consequence, the practice adopted in McLean vs. Spratt, 20 Fla., 515, 524, is appropriate, and should be adopted here. The judgment of this court is that the judgment of the Circuit Court be reversed, and a new trial granted, unless the appellees (plaintiffs below), or their attorneys, within thirty days after the filing of the mandate of this court in the office of the Clerk of the Circuit Court, shall file with the Clerk of said Circuit Court a *remittitur* as of the date of said judgment for the said sum of $211, and upon the filing of the same the said judgment will stand for the balance of said recovery as the judgment of said Circuit Court, to be enforced according to law. If such *remittitur* shall not be entered, as aforesaid, the judgment will, upon the expiration of said thirty days, be held to be vacated and set aside and a new trial awarded. The costs of this appeal will be taxed against the appellees.